IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ALICIA BOATRIGHT, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV508-007
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge L. Ellis Davis ("ALJ" or "ALJ Davis"), denying her claim for Disability, Disability Insurance Benefits, and Supplemental Security Income ("SSI") payments. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff protectively filed for Disability and SSI payments on June 20, 2005, alleging that she became disabled on November 29, 2004, (Tr. at 11) as the result of limitations from degenerative disc disease, heart condition, seizures, and acid reflux. (Tr. at 535). Plaintiff filed a timely request for a hearing. On June 12, 2007, the ALJ held a video hearing in Savannah, Georgia. Kim E. Bennett, a vocational expert testified at the hearing. Plaintiff testified at the hearing from Waycross, Georgia. (Tr. at

AO 72A
(Rev. 8/82)

11). The Appeals Council denied Plaintiff's request for review of the ALJ's denial of benefits, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3-5).

Plaintiff, born on May 31, 1958, was forty-nine (49) years old when the ALJ issued his decision. She has a tenth grade education. (Tr. at 558). She has past relevant work as a waitress, short-order cook, stock clerk, and fast food worker. (Tr. at 583).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then disability benefits are denied. Yuckert, 482 U.S. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482 U.S. at 141. If the impairment meets or equals one of the listed impairments, then the

plaintiff is presumed disabled. Id. If the impairment does not meet or equal one of the listed impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing her past relevant work. Id. If the claimant is unable to perform her past relevant work, then the final step of the evaluation process determines whether she is able to perform other work in the national economy, considering her age, education, and work experience. Yuckert, 482 U.S. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the instant case, the ALJ followed the sequential process to determine that Plaintiff did not engage in substantial gainful employment after the alleged disability onset date of November 29, 2004. At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, status-post fusion at C5-6, gastro-esophageal reflux disease, seizure disorder, and bilateral carpal tunnel syndrome. (Tr. at 13). However, the ALJ also determined, at Step Three, that Plaintiff's medically determinable impairments were not severe enough to meet or medically equal a listed impairment. The ALJ found that Plaintiff has the residual functional capacity to perform work at the medium exertional level with the limitations of no climbing of ropes, ladders, or scaffolds; no more than occasional stooping or crouching; and she should avoid concentrated exposure to hazardous heights and machinery. (Tr. at 14). At the Fourth Step, the ALJ found that Plaintiff is not disabled because she is able to perform her past relevant work as a waitress, short-order cook, and fast-food worker. (Tr. at 17).

## ISSUES PRESENTED

The issues presented in this review are whether:

I. substantial evidence supports ALJ Davis's finding that Plaintiff was not disabled; and

II. ALJ Davis properly considered Plaintiff's subjective allegations of pain.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Substantial evidence supports the ALJ's finding that Plaintiff was not disabled.**

Plaintiff contends that the ALJ ignored the findings of Dr. Enrique Wulff and Dr. Manuel Cuesta regarding her bilateral carpal tunnel syndrome, cervical problems, seizures, and other upper extremity problems. Plaintiff asserts that ALJ Davis did not thoroughly analyze the combination of her impairments. (Doc. No. 19, p. 8). Plaintiff contends that the ALJ did not discuss any medical records from McKinney Community Health Center ("McKinney"). (Id. at 10). Plaintiff asserts that ALJ Davis failed to adequately consider evidence of her lumbar and cervical spine difficulties, ulnar neuropathies, seizures, and severe right shoulder impairment. (Id. at 10-11). Defendant contends that substantial evidence supports the ALJ's findings. (Doc. No. 20, pp. 10-20).

ALJ Davis found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, status-post fusion at C5-6, gastro-esophageal reflux disease, seizure disorder, and bilateral carpal tunnel syndrome. ALJ Davis noted that the combined effects of these impairments result in significant limitations on Plaintiff's ability to function. (Tr. at 13). The ALJ opined that Plaintiff's alleged heart condition does not significantly limit her ability to function. ALJ Davis observed that Plaintiff has a history of chest pain requiring a stent in 2004. The ALJ noted that after stent placement, Plaintiff's pain lessened and she went from taking nitroglycerin on a daily basis to taking it about once a month. The ALJ remarked that a repeat heart catheterization revealed good stent function. ALJ Davis further remarked that Plaintiff's shortness of breath got much better after the stent placement. ALJ Davis observed that

subsequent to stent placement, a chest x-ray was completely normal and a repeat chest x-ray showed that Plaintiff's heart was not significantly enlarged. The ALJ noted that the impression was no acute cardiopulmonary process and that there had been no significant change in nearly a year. ALJ Davis found that Plaintiff's alleged heart condition was not a severe impairment. (Tr. at 14).

ALJ Davis found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. ALJ Davis further found that Plaintiff has the residual functional capacity to perform work at the medium exertional level with the limitations of no climbing of ropes, ladders, or scaffolds; no more than occasional stooping or crouching; and she should avoid concentrated exposure to hazardous heights and machinery. The ALJ observed that in reaching this finding, he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the evidence in the record. The ALJ further observed that he made a credibility assessment of Plaintiff's statements regarding her impairments. (Tr. at 14).

ALJ Davis noted that Plaintiff alleged that she is unable to work due to limitations resulting from her impairments. ALJ Davis further noted that Plaintiff indicated that she has trouble sitting or standing, gets very tired due to her heart condition, and that she gets really stressed because she does not know when she is going to have a seizure. The ALJ observed that Plaintiff testified that she continues to have chest pain after her stent placement, which requires the use of nitroglycerin once or twice a month. The nitroglycerin usually relieves her chest pain. The ALJ noted that Plaintiff testified that she had a neck fusion in 1990. The ALJ further noted that Plaintiff indicated that she

AO 72A
(Rev. 8/82)

6

has seizures maybe once a month. ALJ Davis observed that Plaintiff testified that she has pressure in her lower back and can barely straighten up. Plaintiff indicated that she bought a back brace for this. ALJ Davis remarked that Plaintiff stated that sometimes she can not use her legs, that this happens maybe once or twice a month, and that it can last for a week. ALJ Davis observed that Plaintiff was wearing wrist splints, which she stated were prescribed. Plaintiff testified that she has pain in her arms and wrists and they can go to sleep on her. The ALJ further observed that Plaintiff alleged that she suffered a right shoulder injury for which she should have had surgery. ALJ Davis remarked that Plaintiff testified that she can stand for a maximum of 20-30 minutes and can sit for 20-30 minutes. The ALJ noted that Plaintiff stated that her pain level on the day of the hearing was 5/10, which was typical after taking her daily hydrocodone. The ALJ further noted that Plaintiff indicated that she had to lie down during the day to get pressure off her back. Plaintiff stated that between the hours of 9-5, she has to lie down or sit in a recliner most of the day. (Tr. at 15).

The ALJ, after considering the evidence of record, found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. The ALJ observed that Plaintiff's allegations are partially consistent with the objective evidence, but opined that her impairments were not disabling. ALJ Davis noted that the objective evidence shows that Plaintiff has degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, gastro-esophageal reflux disease, and seizure disorder. ALJ Davis further noted that Plaintiff has undergone cervical fusion and cardiac stenting because of these

impairments and her heart condition. ALJ Davis opined that Plaintiff's pain is not at a level that would preclude her from performing at the medium exertional level with the above noted limitations. The ALJ remarked that Plaintiff was seen for a physical examination eleven months after the stenting and it was indicated that her pain had lessened and that she had gone from taking nitroglycerin on a daily basis to about once a month. The ALJ noted that this was consistent with Plaintiff's testimony. ALJ Davis observed that this was also consistent with the repeat heart catheterization that revealed good stent function and the chest x-rays that were completely normal. (Tr. at 16).

ALJ Davis observed that Plaintiff alleged disability due to neck impairments resulting in fusion surgery in 1990; however, she was able to work despite this impairment until 2004. The ALJ noted that an MRI of Plaintiff's cervical spine in May 2005 showed normal and mild findings at most disc levels and that the C5-6 fusion level was without significant residual intervertebral disc. The ALJ further noted that a repeat MRI of the cervical spine conducted in April 2006 had the same finding. ALJ Davis remarked that a physical examination revealed that Plaintiff had full range of motion of the ankles, knees, and hips bilaterally. There was no evidence of clubbing, cyanosis, edema, or atrophy and motor examination of the lower extremities was 5/5 bilaterally. The ALJ observed that x-rays of the lumbar spine showed no significant acute changes. ALJ Davis opined that these objective findings were inconsistent with Plaintiff's alleged functional limitations and in particular with her allegation that she must lie down most of the day. ALJ Davis further opined that Plaintiff's testimony that her pain level was at a 5 is also inconsistent with her alleged functional limitations. (Tr. at 16).

The ALJ considered Plaintiff's bilateral carpal tunnel syndrome and right shoulder impairment. ALJ Davis noted that a 2005 EMG/nerve conduction study shows mild bilateral carpal tunnel syndrome. ALJ Davis observed that while there was some mild motor and sensory neuropathy, it was concluded that neither upper extremity showed any evidence of abnormality in the muscle groups examined. (Tr. at 16). ALJ Davis remarked that Plaintiff's testimony that she should have had surgery for a right shoulder injury is contrary to the opinion of her treating orthopedist. (Tr. at 16-17). The ALJ noted that Plaintiff's treating orthopedist indicated that the MRI of her right shoulder was basically negative. The treating orthopedist further indicated that there was no evidence of any surgical procedure at that time. ALJ Davis observed that Plaintiff's seizure disorder is controlled with medications. The ALJ remarked that Plaintiff testified that she has seizures once a month, but she reported that she had not had a seizure for a year when she was seen in April 2006. (Tr. at 17).

ALJ Davis opined that the aforementioned evidence regarding Plaintiff's impairments does not support her allegations that she has to lie down most of the day, or her alleged extreme limitations on sitting, standing, walking, and lifting. ALJ Davis observed that he afforded great weight to the assessments of the State Agency medical consultants who determined that Plaintiff can perform medium exertional work with the additional limitations outlined above. The ALJ further observed that those assessments were consistent with the evidence of record when it is viewed in its entirety. (Tr. at 17). ALJ Davis found that Plaintiff is capable of performing past relevant work as a waitress, short-order cook, and fast food worker. The ALJ noted that the vocational expert testified that, based on the residual functional capacity outlined above, Plaintiff could

AO 72A
(Rev. 8/82)

9

perform her past relevant work. ALJ Davis determined that Plaintiff was not disabled. (Tr. at 17).

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled due to her severe impairments. ALJ Davis did not, as Plaintiff asserts, ignore the findings of Dr. Wulff and Dr. Cuesta regarding her cervical and lumbar problems, seizures, abnormal EEG, and upper extremity problems documented by an EMG/nerve conduction study. Nor did ALJ Davis fail to consider the cervical and lumbar MRI's, as Plaintiff alleges. The ALJ discussed two MRI studies of Plaintiff's cervical spine in his decision and observed that they showed normal and mild findings. (Tr. at 16). It should be noted that the remaining MRI studies of Plaintiff's cervical and lumbar spine support the ALJ's findings, as they all revealed no more than mild findings. (Tr. at 223, 224, 226, 521). ALJ Davis also remarked that x-rays of Plaintiff's lumbar spine showed no significant acute changes. (Tr. at 16). Thus, no error resulted from the ALJ's failure to discuss every MRI study because all of the studies support his findings that Plaintiff's cervical and lumbar problems were not disabling.[1] Plaintiff's contention that ALJ Davis failed to discuss the EMG/nerve conduction studies done by Dr. Wulff on June 21, 2005, is without merit. ALJ Davis specifically discussed the June 2005 study in his consideration of Plaintiff's carpal tunnel syndrome. (Tr. at 16). Plaintiff's assertion that the evidence does not support the ALJ's finding that her seizure disorder was controlled with medication is similarly without merit. As noted by ALJ Davis (Tr. at 17), Plaintiff reported not having a seizure for over one year in April 2006 (Tr. at 518) and Plaintiff reported in March 2007 that she had not had a seizure in a few months. (Tr. at 479).

---

[1] See Patrick v. Barnhart, 2004 WL 1618815, *8 (W.D. Tex. 2004) (holding that ALJ's failure to consider medical report was not prejudicial because the report supported the ALJ's conclusions).

These records support the ALJ's finding that Plaintiff's seizures were controlled with medication. Plaintiff's contention that the ALJ did not consider Dr. Garcia's findings regarding her right shoulder impairment also fails. ALJ Davis did not discuss the specific MRI study from McKinney in his decision, but he did consider it because he repeatedly cited the exhibit that contained the study. (Tr. at 13,14,16,17).[2] Furthermore, the MRI cited by Plaintiff revealed only mild to moderate findings and Dr. Garcia's findings never indicated that Plaintiff's right shoulder impairment impacted her ability to perform basic work activities. (Tr. at 482). More importantly, substantial evidence supports the ALJ's finding that Plaintiff's right shoulder impairment was not severe. ALJ Davis noted that Plaintiff's treating orthopedist indicated that an MRI of her right shoulder was basically negative and that there was no evidence of any surgical procedure at that time. (Tr. at 17). Plaintiff's brief assertion that the ALJ did not thoroughly analyze her combination of impairments is without merit. ALJ Davis made the explicit finding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. at 14). This finding, along with the ALJ's extensive findings regarding Plaintiff's individual impairments, establishes that the ALJ properly considered the combined effect of Plaintiff's impairments.[3] The opinions of the State Agency medical consultants also support the ALJ's finding that Plaintiff was not disabled. The medical consultants found that Plaintiff could perform work at the medium exertional level with some limitations.

---

[2] See Sanchez-Wentz v. Barnhart, 216 F. Supp. 2d 967, 979 (D. Neb. 2002) (holding that ALJ considered medical source's opinion despite not addressing it because discussion of source's treatment note containing that opinion showed that ALJ was aware of the opinion).

[3] See Jones v. Bowen, 810 F. 2d 1001, 1006 (11th Cir. 1986) (holding that ALJ properly considered plaintiff's impairments in combination when he exhaustively considered plaintiff's individual impairments and made explicit finding that plaintiff did not have an impairment or combination of impairments that rendered him disabled).

(Tr. at 17). Accordingly, substantial evidence supports ALJ Davis's finding that Plaintiff was not disabled by her impairments because he relied upon evidence that a reasonable mind would find adequate to support his conclusion. See Walden, 672 F. 2d at 838-39.

## II. ALJ Davis properly considered Plaintiff's subjective allegations of pain.

Plaintiff contends that the ALJ's decision to discredit her pain allegations is not supported by substantial evidence. (Doc. No. 19, pp. 8-9). Plaintiff further contends that ALJ Davis did not consider her persistent efforts to obtain pain relief. (Id. at 9). Defendant asserts that ALJ Davis properly assessed Plaintiff's pain allegations and considered Plaintiff's efforts to obtain pain relief. (Doc. No. 20, pp. 10-12, 18-20).

In order to award benefits based on subjective complaints of pain, the following is required: (1) evidence of an underlying medical condition and either (2) objective medical evidence which confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)).

ALJ Davis considered Plaintiff's subjective complaints of pain and provided adequate and express reasons for discounting her complaints. See Dyer, 395 F. 3d at

1210. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. at 16). ALJ Davis noted that Plaintiff's chest pain had lessened following stenting and that she only took nitroglycerin once or twice a month. ALJ Davis further noted that several chest x-rays were normal. The ALJ remarked that Plaintiff's alleged limitations due to her neck fusion surgery in 1990 were not credible because she had worked until 2004, MRI's of her spine showed normal and mild findings, physical examination revealed full range of motion in her lower extremities, and x-rays of the lumbar spine showed no acute changes. (Tr. at 16). ALJ Davis observed that Plaintiff's complaints regarding her carpal tunnel syndrome were inconsistent with the EMG/nerve conduction study that shows only mild bilateral carpal tunnel. ALJ Davis further observed that while there was some mild motor and sensory neuropathy, it was concluded that neither upper extremity showed any evidence of abnormality in the muscle groups examined. (Tr. at 16). The ALJ noted that Plaintiff's right shoulder complaints were inconsistent with the opinion of her treating orthopedist, who indicated that her MRI was basically negative and there was no evidence of any surgical procedure. (Tr. at 16-17). The ALJ further noted that Plaintiff's seizure disorder is controlled with medications. ALJ Davis opined that the aforementioned evidence regarding Plaintiff's impairments does not support her allegations of extreme limitations. (Tr. at 17). Plaintiff's assertions that the ALJ did not properly consider her persistent efforts to obtain pain relief are without merit. Contrary to Plaintiff's assertions, Social Security Ruling 96-7p does not require the ALJ to discuss her longitudinal efforts to seek pain relief. Social Security Ruling 96-7p merely lists seeking pain relief among the factors an ALJ is to consider when evaluating the

credibility of a claimant's statements regarding symptoms. Social Security Ruling 96-7p requires the ALJ's decision to contain specific reasons for his credibility finding, which ALJ Davis has done here. Thus, Plaintiff's assertions are without merit because the ALJ properly discredited her subjective allegations of pain.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 23rd day of February, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE